UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**AUG 1 4 2000**

SUSAN LIEBIG-GRIGSBY,           )
                                )
            plaintiff           )
                                )
        v                       )   No. **00C   4922**
                                )
UNITED STATES OF AMERICA,       )   Plaintiff demands
                                )   trial by jury.
            defendant           )

**JUDGE PALLMEYER**

COMPLAINT AT LAW
**MAGISTRATE JUDGE NOLAN**

The plaintiff, **SUSAN LIEBIG-GRIGSBY**, by her attorneys, **LEVIN & PERCONTI** and **WILLIAM G. PINTAS & ASSOCIATES, LTD.**, complains against the defendant, the **UNITED STATES OF AMERICA**, and states as follows:

COUNT I

The plaintiff, **SUSAN LIEBIG-GRIGSBY**, by her attorneys, **LEVIN & PERCONTI** and **WILLIAM G. PINTAS & ASSOCIATES, LTD.**, complains against the defendant, the **UNITED STATES OF AMERICA**, and states as follows:

1.  That this action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346 and §§2671 - 2680.

2.  That prior and subsequent to October 16, 1997, and at all times relevant herein, the defendant **UNITED STATES OF AMERICA**, by its duly authorized agents, the Department of Veterans Affairs ("VA") medical facilities, Edward J. Hines Hospital and Westside Medical Center, engaged in the business of offering medical and

hospital services and facilities in, respectively, the Cities of Hines and Chicago, Cook County, Illinois and engaged on its staff various physicians, residents, nurses, specialists and other personnel.

3. That the defendant **UNITED STATES OF AMERICA**, by its duly authorized agent, the **VA**, owned, operated, maintained, managed and controlled certain medical facilities, Edward J. Hines Hospital and Westside Medical Center, where it provided rooms, laboratories, technicians, physicians and nursing services, for patients treated at these facilities.

4. That the defendant **UNITED STATES OF AMERICA**, through its duly authorized agent, the **VA**, held itself out to the public and particularly the plaintiff, that it possessed the requisite skill, competence, knowledge, facilities, personnel for patients treated at its facilities.

5. On or about November 3, 1995, the plaintiff, **SUSAN LIEBIG-GRIGSBY**, was a patient at Edward J. Hines Hospital and underwent cervical spine surgery.

6. That subsequent to the surgery, the plaintiff's neurological condition began to deteriorate and continued to deteriorate absent appropriate medical treatment until the plaintiff lost the ability to ambulate and became permanently wheelchair bound.

2

7. At all times relevant to this Complaint, it was the duty of the defendant, by and through its duly licensed agents, apparent agents, residents, servants and employees, including, but not limited to Dr. Cristina Orfei, to exercise ordinary care and caution in the care and treatment of the plaintiff.

8. At all times mentioned herein, Dr. Cristina Orfei and others treating the plaintiff at the **VA** facilities, were the authorized agents, servants and/or employees of the defendant, **UNITED STATES OF AMERICAN**, and as such, the **UNITED STATES OF AMERICA** is vicariously liable for the negligent acts of Dr. Cristina Orfei and others as alleged herein.

9. On or about October 16, 1997, the plaintiff sought treatment at the **VA** Westside Medical Center for her neurologic condition and the defendant examined the plaintiff and recommended a course of medical treatment which the plaintiff undertook upon the advice of said defendant.

10. Defendant **UNITED STATES OF AMERICA** was guilty of one or more of the following careless and negligent acts or omissions in the examination, treatment or diagnosis of the plaintiff:

      (a) carelessly and negligently failed to recognize the signs and symptoms of progressive neurologic dysfunction;

      (b) carelessly and negligently failed to promptly diagnose the plaintiff's condition of ill being subsequent to signs of progressive neurologic dysfunction;

(c)   carelessly and negligently failed to properly diagnose the plaintiff's condition of ill being subsequent to signs of progressive neurologic dysfunction;

(d)   carelessly and negligently failed to promptly and properly treat the plaintiff's condition of ill being subsequent to signs of progressive neurologic dysfunction;

(e)   carelessly and negligently failed to refer the plaintiff to the neurosurgery service for an evaluation; and,

(f)   carelessly and negligently allowed the plaintiff's medical condition to deteriorate to the point where she lost the opportunity to rectify and/or minimize the progression of her neurologic dysfunction when there was ample oppportunity to react to the progressive symptomatolgy.

11.   As a direct and proximate result of the aforesaid, the plaintiff, **SUSAN LIEBIG-GRIGSBY**, became wheelchair bound secondary to the degree to which her nerological dysfunction was allowed to progress.

12.   As a direct and proximate result of the aforesaid, the plaintiff, **SUSAN LIEBIG-GRIGSBY**, suffered injuries of a personal and pecuniary nature including, but not limited to, lost wages, medical expenses, pain and suffering, disability and disfigurement, and physical and emotional trauma, all of which are permanent.

13.   This claim is being brought within six months after the date plaintiff's adminstrative claim was denied pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2675(a) and 2401

4

(b). (Denial of Claim dated March 21, 2000 attached hereto and marked as Exhibit C)

14. Attached to this Complaint as Exhibits D and E are the Affidavit of the Attorney in this cause and the Health Care Professional's Report.

**WHEREFORE**, the plaintiff, **SUSAN LIEBIG-GRIGSBY**, asks that a judgment be entered against the defendant, the **UNITED STATES OF AMERICA**, in the amount of Ten Million ($10,000,000.00) Dollars, which will fairly compensate the plaintiff for the injuries sustained.

(Spoliation of Evidence)

The plaintiff, **SUSAN LIEBIG-GRIGSBY**, by her attorneys, **LEVIN & PERCONTI and WILLIAM J. PINTAS & ASSOCIATES, LTD.,** complains against the defendant, the **UNITED STATES OF AMERICA**, and states as follows:

1-13. The plaintiff, **SUSAN LIEBIG-GRIGSBY**, restates and realleges paragraphs 1 through 13 of Count I of this Complaint as and for paragraphs 1 through 13 of this Count II.

14. The plaintiff has been treated at defendant's medical facilities in connection with her neurological disease. That plaintiff has sought all her medical records in connection with this treatment.

15. On September 16, 1999, it was respresented to the plaintiff by Stephen W. Geist, staff attorney, Office of the Regional Counsel, Department of Veterans Affairs, that he was

5

tendering to the plaintiff seven of nine available volumes of the plaintiff's medical records and "the whereabouts of the remaining two volumes is still an open question" (Exhibit A).

16. On December 30, 1999, it was represented to the plaintiff by Stephen W. Geist, staff attorney, Office of the Regional Counsel, Department of Veterans Affairs, that "volumes 8 and 9 of the VA medical record remain "lost" (Exhibit B).

17. The defendant had actual knowledge that the aforementioned medical records and identity of witnesses would be important evidence in the prosecution of plaintiff's medical negligence case against the defendant.

18. The defendant owed the plaintiff a duty to exercise ordinary care to preserve the plaintiff's file, medical records, identity of medical care providers and witnesses in that it was reasonably foreseeable that this evidence could be essential in proving the medical negligence action.

19. Breaching its duty to exercise reasonable care, the defendant lost or destroyed the medical records and other documents contained in the missing volumes which would identify the medical care provided, if any, the medical care providers and witnesses.

20. As a direct and proximate result of the aforesaid negligent conduct, the defendant has potentially impaired the plaintiff's ability to prosecute this medical negligence case.

21. As a direct and proximate result of one or more foregoing negligent acts or omissions by the defendants, the

plaintiff suffered injuries of a personal and pecuniary nature, including but not limited to, lost wages, medical expenses, pain and suffering, and physical and emotional trauma, all of which are permanent.

**WHEREFORE**, the plaintiff, **SUSAN LIEBIG-GRIGSBY**, asks that a judgment be entered against the defendant, the **UNITED STATES OF AMERICA**, in the amount of Ten Million ($10,000,000.00) Dollars, which will fairly compensate the plaintiff for the injuries sustained.

Respectfully submitted,

**LEVIN & PERCONTI**

BY: _____
JOHN J. PERCONTI

**LEVIN & PERCONTI**
134 North LaSalle Street
Suite 314
Chicago, Illinois 60602
(312) 332-2872
(312) 332-3112 fax

**WILLIAM G. PINTAS**
**WILLIAM G. PINTAS & ASSOCIATES, LTD.**
368 West Huron
Suite 100
Chicago, Illinois 60610
(312) 664-4411
(312) 664-8833 fax



**DEPARTMENT OF VETERANS AFFAIRS**
Office of Regional Counsel
P.O. Box 1427
Hines, IL 60141

September 16, 1999

In Reply Refer To:

John Perconti                                                    578/02B
Levin & Perconti
134 N. LaSalle St., Suite 314
Chicago, IL 60602


Subj:  Susan Liebig-Grigsby


Dear Mr. Perconti:

This is to confirm the understanding that we have in the pending tort claim of Susan
Liebig-Grigsby, as set forth in your letter of September 3, 1999.

With this letter, I am delivering copied x-ray and MRI films from VA WestSide Medical
Center and VA Hines Hospital for all x-rays and MRIs taken of Susan Liebig-Grigsby on
or after October 18, 1995.  There are 41 "plain films" and 13 MRI films from WestSide.
There are 16 plain films and 52 nuero/MRI films from Hines.  The copied WestSide films
are from the original films that your client returned from her possession (through you) to
VA.  Included here also are copies of reports included in the original film "jackets."
Please tender a check for $150.00, payable to "Department of Veterans Affairs," for
photocopies of all films.

*I promise to deliver one reproduction of the entire VA benefit claims file to you within the
next week.*  I am unable to carry both the x-rays and claims files in one delivery.

You were to arrange for Record Copy Service to photocopy seven of nine available
volumes of Ms. Liebig-Grigsby's medical record at VA WestSide.  The whereabouts of
the remaining two volumes is still an open question.



EXHIBIT
A



**DEPARTMENT OF VETERANS AFFAIRS**
**Office of Regional Counsel**
**P.O. Box 1427**
**Hines, IL 60141**

December 30, 1999

In Reply Refer To:

578/02B

John Perconti
Perconti & Levin
134 N. LaSalle St. Suite 314
Chicago, IL 60602

Subj:  Administrative Tort Claim of Susan Liebig-Grigsby, VA Case ID: LIE30452

Dear Mr. Perconti:

This confirms our telephone conversation of this morning.

Susan Liebig-Grigsby's claim is now the primary work on my desk.  I am seeking a review of the treatment record---as it currently exists---by medical authority within VA. You have also requested your own medical "independent review."  I hope that you will share your reviewer's report with me when you receive it.

By agreement, we extend the administrative time to resolve this claim for the next thirty days, or until VA can consider medical reviews that you and I obtain.  This extension agreement protects all of your client's appellate rights regarding VA's decision on the claim for a period of six months beginning the ending of the extension period.  You and I agree that we will timely communicate with each other if either side seeks to terminate the extension period.

Volumes 8 and 9 of the VA medical record remain "lost."  It's a frustrating case.  I will seek to have determined the government's position on the administrative claim by January 31, 2000.

Sincerely,

Earl E. Parsons
Regional Counsel

By:

Staff Attorney
(708)202-2210

JAN -3- 2000

**EXHIBIT**

B



**DEPARTMENT OF VETERANS AFFAIRS**
Office of Regional Counsel
P.O. Box 1427
Hines, IL 60141

MAR 2 1 2000

John Perconti
Levin & Perconti
134 N. LaSalle St. Suite 314
Chicago, IL 60602

In Reply Refer To:

578/02B

Subj: Administrative Tort Claim of Susan Liebig-Grigsby, VA Case ID: LIE30452

Dear Mr. Perconti:

This responds to the claim filed in the amount of $10,000,000.00, received in our office on April 8, 1999, asserting medical negligence by Department of Veterans Affairs (VA) facilities in the care and treatment of Susan Liebig-Grigsby between late 1995 and late 1997.

Our investigation of the facts and circumstances does not disclose negligence on the part of any VA employee. Regretfully, therefore, we must deny your claim. Your attention is invited to the provisions of the Federal Tort Claims Act (28 U.S.C. § 1346(b) and 2675(a)) which provide that a tort claim which is administratively denied may be presented to a United States district court for judicial consideration. Such suit must be initiated within six months after the date of mailing of this notice of final denial (28 U.S.C. § 2401 (b)). If you decide to initiate a suit against the Department of Veterans Affairs, you are advised that the proper party defendant is the United States of America.

In the alternative, if you are dissatisfied with our decision, you may, prior to the expiration of six months from the date of mailing of this notice of final denial, file a request with the Department of Veterans Affairs for reconsideration of the claim. This request for reconsideration should be addressed to the Department Veterans Affairs, General Counsel (021B), 810 Vermont Avenue, NW, Washington, D.C. 20420. On filing such a request for reconsideration, the VA shall have six months from the date of that filing in which to make a final disposition of the claim, and your option to file suit in an appropriate United States District Court under 28 U.S.C. §2675(a) shall not accrue until six months after the filing of such request for reconsideration (28 C.F.R §14.9(b)).

Sincerely yours,

EARL E. PARSONS
Regional Counsel

MAR 23 2000

**EXHIBIT**
**C**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SUSAN LIEBIG-GRIGSBY,          )
                               )
          plaintiff            )
                               )
          v                    )     No.
                               )
UNITED STATES OF AMERICA,      )
                               )
          defendant            )

## ATTORNEY'S AFFIDAVIT

Your affiant, JOHN J. PERCONTI attorney for SUSAN LIEBIG-GRIGSBY, being first duly sworn, deposes and states that:

1.  I am the attorney for the SUSAN LIEBIG GRIGSBY.

2.  I have consulted and reviewed the facts surrounding the treatment of SUSAN LIEBIG-GRIGSBY by the VETERAN ADMINISTRATION HOSPITALS with a physician licensed to practice medicine in all its branches who I reasonably believe is knowledgeable in the relevant issues involved in this particular action.

3.  The said reviewing physician practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in this particular action.

4.  The said reviewing physician is qualified by experience or has demonstrated competence in the subject of this case and has determined in a written report (a copy of which is attached



EXHIBIT

D

hereto), after a review of SUSAN LIEBIG-GRIGSBY'S medical records and other relevant material, that there is a reasonable and meritorious cause for the filing of this action.

5. I have concluded, on the basis of the said review and consultation of the reviewing physician, that there is a reasonable and meritorious cause for the filing of this action.

6. A true and correct copy of the report of the reviewing physician is attached hereto.

_____
JOHN J. PERCONTI

Subscribed and sworn to
before me 20th day of
July, 2000.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
JUDITH A. BERNACIAK
Notary Public, State of Illinois
My Commission Expires 9/29/02

February 14, 2000

Mr. John Perconti
Attorney at Law
134 N. Lasalle Street
Suite 314
Chicago IL 60602

### RE:  SUSAN LIEBIG-GRIGSBY

Dear Mr. Perconti:

I did receive the voluminous information you provided concerning the above patient's above patient's evaluation and care at the Veterans Administration Hospitals in the Chicago area.

Since I was going to be away much of the next week or so, I want to make absolutely sure that you had my opinions in hand so that you can make an independent decision as to what, if anything, to do further with this case.

Please be aware that I reviewed each and every piece of information submitted, including all of the hospital records and all of the radiographs.

I will attempt to chronologically describe the events as I gleaned them from the records, and then provide my interpretation of the various radiographic studies reviewed.

Ms. Liebig presented to the VA Hospital in the fall of 1995 with a number of neurologic complaints.  She was initially evaluated at one VA and then transferred to a second for further evaluation and eventual treatment.

The complaints expressed at that time were progressive numbness and pain in her neck and her back as well as her arms and legs.  She told the physicians that she had fallen several times.

A very careful and detailed neurologic examination was accomplished, and she was found to be severely hyperreflexic.  She was described as having clonus (greater than ten beats) in both



**EXHIBIT**

_E_

lower extremities. Her hands were felt to be weak with strength of 4/5 on the right and 3/5 on the left. In the lower extremities, the strength was felt to be 3/5 proximally and 4/5 distally. She was described as having a spastic gait.

An MRI scan was performed on 10-25-95. To my direct view, this study showed severe stenosis at both the C4-5 and the C5-6 levels. In addition, there was a hyperintense signal within the spinal cord behind the C4-5 disc space consistent with severe compression/ischemia.

On November 3, 1995, Ms. Liebig underwent extensive anterior cervical surgery with ultimate fusion from C4 to C6.

She was in the hospital a number of weeks, but on discharge the following statement was made: "clonus and myelopathic signs all but resolved".

As best as I could determine from the records provided, direct neurosurgical follow-up continued from that point until about July of 1996.

There were neurosurgery visits documented in December of 1995, January of 1996, March of 1996 and finally in July of 1996.

The general theme from these visits was that the patient had recovered function in the lower extremities and was able to walk without any difficulty. The patient was still complaining of generalized numbness and apparently still had some degree of hand weakness.

Nevertheless, the myelopathy appeared to have stabilized with the surgical intervention.

Once again it appears that the last time the patient was directly seen by a neurosurgical physician was July 1, 1996. That individual said that Ms. Liebig felt that she had "no improvement". A specific neurologic examination was not documented, however, an MRI scan was ordered. That MRI scan was performed on July 22, 1996 and to my review, appeared to show that there had been a reasonable decompression of the affected areas.

Apparently the concerns expressed in the neurosurgical office visit then led to a neurology consult. The neurology consult made the following statement: "has not improved with decompression". This would seem to be at odds with all of the other prior examination. Nevertheless, that same consultant documents that the upper extremity strength is 5/5 (which would be a significant improvement from what was described preoperatively). That same consultant describes lower extremity "giveaway weakness" (This would also be an improvement from what was described preoperatively). Reflexes were recorded as 3/4. No clonus was found and no pathological reflexes were found. (These would likewise be an improvement over what was described preoperatively).

RE:   SUSAN LIEBIG-GRIGSBY
      FEBRUARY 14, 2000
      PAGE THREE

From this point forward, it appears that most of Ms. Liebig's visits to the VA Hospital with regards to her general health and with regards to her neurologic condition, were undertaken through the Womens' Health Services.

I can first begin to find notes from the Womens' Health Services in April, 1997. Whoever was seeing her at that time noted that Ms. Liebig's "spasticity is worse". No neurologic exam was recorded.

Apparently on October 10, 1997, Ms. Liebig fell "backwards down a flight of stairs". She was seen on October 16, 1997, however, once again no neurologic exam was documented. On October 27, 1997, she was apparently seen by a neurologist in the Womens' Health Services- Dr. Orefei. It is noted that the patient's gait was extremely unsteady. Once again, no specific neurologic examination is recorded, however, a wheelchair was ordered for the patient.

In early November of 1997, Ms. Liebig was once again seen by Dr. Orefei. The following observations were made: "able to stand, but not safely ambulate secondary to spasticity and weakness". The patient's lower extremity strength was said to be 3/5. The upper extremity strength was said to be the same on the left side, however, the patient was not using the right arm. The deep tendon reflexes were found to be significantly hyperactive. No clonus was documented. The physician's assessment was that there was a progressive cervical myelopathy. The plan was to order a cervical MRI scan.

Indeed a cervical MRI scan was performed on December 2, 1997. To my direct review, this MRI scan showed significant artifact from C4-C6 secondary to the patient's previously having undergone a corpectomy with the placement of plates and screws.

The sagittal views don't show any clearcut abnormalities, but on the axial sections, there is severe stenosis at C3-4 and C6-7, above and below the site of her previous surgeries. In addition, there is once again a hyperintense signal within the spinal cord at approximately the C5 level. This generally represents evidence of significant ischemic changes within the spinal cord.

Ms. Liebig WAS seen in the Neurology Clinic in December of 1997. They document weakness in her legs as well as significant increase in the deep tendon reflexes as well as the return of clonus.

It is not entirely clear what happened in the intervening months, but by November of 1998, Ms. Liebig was wheelchair-bound because of an inability to walk secondary to severe spasticity and weakness in her lower extremities.

I could find no documentation whatsoever that there was any consideration of referring the patient back for neurosurgical evaluation.

RE: **SUSAN LIEBIG**
**FEBRUARY 14, 2000**
**PAGE FOUR**

Thus, based on the above information, the following conclusions appear appropriate: Ms. Liebig presented with severe spondylitic myelopathy, which was diagnosed by clinical examination MRI scan and was treated by anterior cervical corpectomy and fusion. In my opinion, the records clearly demonstrate that Ms. Liebig received significant benefit from this surgical intervention, although there were obviously some residual symptoms and complaints.

Some time early in 1997, Ms. Liebig clearly began to deteriorate. By November and December of 1997, it appears as if she was as bad, if not worse, than she was at the time of her initial presentation in 1995.

The physicians seeing her had ordered appropriate studies. They were aware that her problem was "progressive" in nature. Assuming they reviewed the studies, they would have appreciated that there were additional problems going on to cause significant cord compression. It cannot be determined why a neurosurgical consultation was not obtained, and why this woman was allowed to go on to become wheelchair-bound because of a potentially correctible problem.

In my opinion, the issues in this case are best summarized in the investigation taken by the VA Hospital itself. In a memo of April 21, 1999 a "staff position, neurosurgery section, surgical service" makes the following statement "the patient should have been re-evaluated by the Neurosurgery Service; I see no documentation that Neurosurgery was aware of the progression of her symptoms or changes on her MRI. Perhaps further surgery could have prevented the progression of her symptoms; it certainly is not unusual for patients to require more than one procedure in treatment of progressive cervical myelopathy".

It is thus my considered opinion that the physicians caring for Ms. Liebig subsequent to July, 1996 were negligent in not recognizing the signs and symptoms of progressive neurologic dysfunction. Indeed, when the neurologists clearly recognized the progressive nature of her problem, they do nothing other than order an MRI scan and order her a wheelchair.

While surgery for cervical myelopathy certainly cannot guarantee that the patient's condition will improve, unless there are extenuating circumstances, the surgery will often halt progression of the disease. Unfortunately, once the disease has reached a point where the patient is wheelchair-bound, there is virtually nothing that can be done to improve the situation. There appears to have been ample opportunity to react to the progressive symptomatology and to provide the patient with at least an opportunity to be re-evaluated by individuals who are more familiar with the natural history of this disease process and the potential applications of other therapeutic modalities.

Please be aware that [    ] of the opinions expressed in this report are based upon a reasonable degree of medical certainty and are based solely on the records and radiographs provided by your offices. Should additional information become available, then it is possible that any or all of these opinions could change.

JS 44
(Rev. 07/89)

*Cut 2* CIVIL COVER SHEET

00C 4922

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

SUSAN LIEBIG-GRIGSBY

DOCKETED
AUG 1 4 2000

## DEFENDANTS

UNITED STATES OF AMERICA

JUDGE PALLMEYER

MAGISTRATE JUDGE NOLAN

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ Cook _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Levin & Perconti
134 North LaSalle Street, Suite 314
Chicago, IL 60602
(312) 332-2872

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN × IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Federal Tort Claims Act, 28 U.S.C. §§2671-2680

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

*PERSONAL INJURY*
☒ 362 Personal Injury— Med Malpractice
☐ 365 Personal Injury— Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapprotionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

## VI. ORIGIN (PLACE AN × IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23
DEMAND $ _____
Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. REMARKS
**General Rule 2.21D(2)**
In response to ☒ is not a refiling of a previously dismissed action
this case ☐ is a refiling of case number _____ of Judge _____

DATE 7/27/2000

SIGNATURE OF ATTORNEY OF RECORD *John Perconti*

UNITED STATES DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS



**In the Matter of**

SUSAN LIEBIG-GRIGSBY
    v.
UNITED STATES OF AMERICA

**Case Number:** **00C 4922**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:
Susan Liebig-Grigsby

**JUDGE PALLMEYER**

**MAGISTRATE JUDGE NOLAN**

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME  John J. Perconti | NAME  William G. Pintas |
| FIRM  Levin & Perconti | FIRM  William G. Pintas & Associates, Ltd. |
| STREET ADDRESS  134 North LaSalle Street #314 | STREET ADDRESS  368 West Huron    #100 |
| CITY/STATE/ZIP  Chicago, Illinois 60602 | CITY/STATE/ZIP  Chicago, Illinois 60610 |
| TELEPHONE NUMBER  (312) 332-2872 | TELEPHONE NUMBER  (312) 664-4411 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  6183748 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  6189572 |
| MEMBER OF TRIAL BAR?  YES [X]  NO ☐ | MEMBER OF TRIAL BAR?  YES [X]  NO ☐ |
| TRIAL ATTORNEY?  YES [X]  NO ☐ | TRIAL ATTORNEY?  YES [X]  NO ☐ |
|  | DESIGNATED AS LOCAL COUNSEL?  YES ☐  NO ☐ |
| **(C)** | **(D)** |
| SIGNATURE | SIGNATURE |
| NAME  Mary Ellen Cagney | NAME  Jeffrey E. Martin |
| FIRM  Levin & Perconti | FIRM  Levin & Perconti |
| STREET ADDRESS  134 North LaSalle Street | STREET ADDRESS  134 North LaSalle Street |
| CITY/STATE/ZIP  Chicago, IL 60602 | CITY/STATE/ZIP  Chicago, IL 60602 |
| TELEPHONE NUMBER  (312) 332-2872 | TELEPHONE NUMBER  (312) 332-2872 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  0365165 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  6183291 |
| MEMBER OF TRIAL BAR?  YES [X]  NO ☐ | MEMBER OF TRIAL BAR?  YES [X]  NO ☐ |
| TRIAL ATTORNEY?  YES [X]  NO ☐ | TRIAL ATTORNEY?  YES [X]  NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?  YES ☐  NO ☐ | DESIGNATED AS LOCAL COUNSEL?  YES ☐  NO ☐ |

**PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.**